# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

MYRTLE McGEE,

     Plaintiff,

v.                           Civil No. 05-CV-10272-BC

COMMISSIONER OF           DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,           MAGISTRATE JUDGE CHARLES E. BINDER

     Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, IT IS RECOMMENDED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED, that the FINDINGS OF THE COMMISSIONER BE REVERSED, and the case REMANDED for an award of benefits.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

insurance benefits.  This matter is currently before the Court on cross motions for summary judgment.

Plaintiff was 44 years of age at the time of the most recent administrative hearing and has completed a GED.  (Tr. at 414-15.)  Plaintiff's relevant work history included assembly line work at General Motors for approximately 19 years.  (Tr. at 415.)  Plaintiff filed claims for disability benefits on March 17, 2000, and July 6, 2001, alleging that she became unable to work on August 27, 1999.  (Tr. at 85-87, 82-84.)  These claims were  denied at the initial stage.  (Tr. at 41, 37.)  In denying Plaintiff's claims, the Defendant Commissioner considered muscle/ligament disorder and fascia, disorders of the back, mild carpal tunnel and mild ulnar neuropathy as possible bases of disability.  (*Id.*)  On January 15, 2003, Plaintiff appeared with counsel before ALJ Meuwissen, who in a Decision dated March 19, 2003, found the Plaintiff not disabled.  (Tr. at 42-51.)  Plaintiff appealed, and on March 23, 2004, the case was remanded to the Administrative Law Judge (ALJ) for further proceedings.   After remand, on June 9, 2004, Plaintiff appeared with counsel before ALJ B. Lloyd Blair, who considered the case *de novo*.  (Tr. at 410-37.)  In a Decision dated June 25, 2004, the ALJ found that Plaintiff was not disabled.  (Tr. at 17-26.)  Plaintiff requested review of this decision on June 29, 2004.  (Tr. at 13.)

The ALJ's decision became the final decision of the Commissioner when, after the review of an additional exhibit, (AC-1, Tr. at 288-354), the Appeals Council, on August 19, 2005, denied Plaintiff's request for review.  (Tr. at 5-7.)  On October 18, 2005, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.      Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case de novo, . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

## C.     Governing Law

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security. The test is as follows:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.

> Step Three: If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.

> Step Four: If the claimant is able to perform his or her previous work, benefits are denied without further analysis.

> Step Five: If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th

Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985).  "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled."  *Preslar*, 14 F.3d at 1110.  "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]."  *Id.*  "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ."  *Id.*

### D.     Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was seen at the request of the Disability Determination Service on May 17, 2000, by Dr. George Stilwill, an orthopaedic surgeon.  Plaintiff's main complaint at the time was pain and swelling in her hands and right ankle and right hip pain.  (Tr. at 224.)  Plaintiff reported that she started having hand and hip pain in 1998 while she was working at General Motors doing repetitive work.  An earlier EMG revealed that Plaintiff had some nerve damage on the right side and carpal tunnel syndrome on the left.  At the time of the examination, Plaintiff was undergoing physical therapy.  The doctor reported that a physical examination was completely normal with full range of motion of the spine.  Plaintiff had no tenderness over the carpal tunnel and no nerve deficit.  Dr. Stilwill found no abnormalities in either hip or lower extremity and also found no evidence of orthopedic impairment at this examination.  (Tr. at 225.)  Approximately one month later, Dr. Stilwill reported that he had reviewed Plaintiff's earlier EMG and nerve conduction study.  The report showed an abnormal study with mild left median neuropathy at the wrist and mild right ulnar neuropathy at the elbow.  Dr. Stilwill suggested that Plaintiff continue with the restrictions of no repetitive work with her hands and no work above waist level.  (Tr. at 223.)

On June 12, 2000, Plaintiff was seen by Dr. Gavin Awerbuch, for neurological consultation. Plaintiff complained of bilateral arm pain, left wrist pain and numbness of her left leg and arm. She described intermittent back pain, right leg numbness, pain in her right elbow, hand symptoms that awoke her from sleep, and that her hands were intolerant of the cold, turning numb, discolored and picky. (Tr. at 264.) The doctor reported that Plaintiff's grip strength was reduced bilaterally and that there was sensory loss in both hands. Range of motion was fairly normal, but straight leg raising produced paresthesias[1] on the right radiating into the dorsum and outer aspect of the foot. Dr. Awerbuch reported that Plaintiff had occupational overuse syndrome with bilateral carpal tunnel syndrome, right ulnar neuropathy, right leg radiculopathy, and Raynaud's syndrome. (Tr. at 264-65.) The doctor recommended an MRI of the lumbar spine and electrodiagnostic studies. The doctor advised Plaintiff to stay off work and to limit her activities to tolerance. (Tr. at 265.)

An EMG report dated June 12, 2000, showed bilateral carpal tunnel syndrome and right ulnar neuropathy. (Tr. at 266.) An MRI report dated July 20, 2000, showed probable minimal disc bulge at L4-5, L5-S1. (Tr. at 262.) Another EMG study conducted on August 3, 2000, showed right tarsal tunnel syndrome. (Tr. at 258.)

Plaintiff was regularly seen by Dr. Awerbuch thereafter. Plaintiff continued to complain of bilateral wrist pain, hand numbness, right elbow pain, and reported a loss of grip strength as well as paresthesias. Plaintiff also complained of pain in the right leg, swelling of the ankle, and chronic back pain. (Tr. at 257.) Upon examination, the doctor noted that Tinel's sign was positive over the right medial malleolus and that there was swelling over the ankle. Tinel's and Phalen's signs were positive at the wrists bilaterally and Tinel's at the right ankle. Plaintiff had tenderness

---

[1]Paresthesia is an abnormal sensation of tingling, burning, crawling, or tickling. It occurs in some forms of neuritis, in certain abnormal conditions of the spinal cord, etc. 4 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE P-81-82.

over the lumbar spine with palpation.  Dr. Awerbuch's impressions were bilateral carpal tunnel syndrome, bilateral ulnar neuropathy, mild lumbar bulging disc, right tarsal tunnel syndrome, and possible peroneal tendinitis.  The doctor discussed treatment options with Plaintiff and suggested that she see an orthopedic surgeon or podiatrist regarding her right foot pain.   He also recommended referral to a hand surgeon for evaluation of her wrists and elbows.  (*Id*.)

Plaintiff was seen by Dr. Thomas Beird, M.D., on September 12, 2000, regarding carpal tunnel surgery.  After examining Plaintiff, Dr. Beird felt that she was a good candidate for surgery, as her problems were severe, affecting her ability to perform her work and simple tasks, and were interfering with her quality of life.  (Tr. at 275.)

Plaintiff continued to see Dr. Awerbuch for follow-up examinations.  Tinel's sign continued positive at the wrists and right elbow, and she had reduced grip strength.  Plaintiff's blood work at this time also showed mild anemia and low potassium levels.  In October 2000, Plaintiff was advised to see her family physician regarding her anemia and to stay off work.  (Tr. at 256.)  Dr. Awerbuch's notes dated October 23, 2000, indicate that Plaintiff returned to work and to her usual job on the assembly line where she had to perform repetitive motions.  After attempting to do the job, she had a severe exacerbation of her wrist and elbow pain with numbness and had to leave work.  She returned to the doctor for an off-work slip.  (Tr. at 255.)  Dr. Awerbuch examined Plaintiff and reported Tinel's sign to be positive at the wrists and elbows.  Grip strength was reduced, and she had spasms in her lumbar spine with reduced range of motion.  Plaintiff reported that she was considering surgery and that she would follow up with her doctor.  Dr. Awerbuch stated that Plaintiff could not return to her usual work.  (*Id*.)

Similar results were seen in an examination conducted in mid-February 2001.  Plaintiff returned to Dr. Awerbuch on February 13, 2001, for follow-up examination.  Plaintiff at that time

reported that she was fired from her job because she left work after trying it again for a week. Dr. Awerbuch recommended a follow-up EMG of Plaintiff's arms to help determine whether surgery was necessary. (Tr. at 251.)

On April 19, 2001, Plaintiff was seen again by Dr. Awerbuch. She reported that her job was reinstated at General Motors and that she had to be seen to get her off work slip renewed. She continued to have the same complaints, and Tinel's and Phalen's signs were still positive. (Tr. at 247.) An EMG was performed and showed that Plaintiff had right tarsal tunnel syndrome. (Tr. at 248.)

Between March 19, 2001, and April 25, 2001, Plaintiff underwent physical therapy at Sparrow Hospital at the request of Dr. Awerbuch. The physical therapist reported that Plaintiff had progressed well and that the physical therapy goals had been met. (Tr. at 161.) Plaintiff's level of pain had decreased. (*Id.*)

On April 24, 2001, Plaintiff returned to Dr. Beird regarding the surgery on her right hand. Plaintiff was eager to proceed with the surgery, and Dr. Beird explained the risks and benefits to her. Dr. Beird continued to feel that Plaintiff was a good candidate for surgery. (Tr. at 275.)

Notes dated August 9, 2001, indicate that Plaintiff had returned to work in July and that she was only able to tolerate her work for four hours. Examination revealed positive Tinel's at both wrists, and grip strength was reduced. Plaintiff had tenderness in her lower back with reduced motion, and she walked with a limp. Dr. Awerbuch renewed Plaintiff's prescription for Motrin. (Tr. at 241.) An EMG dated August 9 showed bilateral carpal tunnel syndrome and right ulnar neuropathy without improvement. (Tr. at 243.)

In a letter to the Disability Determination Service, dated September 26, 2001, Dr. Stilwill reported that he had evaluated Plaintiff for the same complaints that he had seen her for in May

of 2000.  Physical examination revealed hypermobility, full range of motion of all joints with atrophy, neurologic change or deficit.  Grip was 60 on the right and 45 on the left.  She had full range of motion of the spine without spasm, and there was minimal tenderness.  Dr. Stilwill found no orthopedic evidence of physical impairment.  (Tr. at 218-20.)  After review of an MRI report, Dr. Stilwill reported that Plaintiff had a questionable minimal disc bulge without evidence of stenosis or herniation at the L4-5, and a minimal disc bulge at L5-S1 without stenosis, foraminal narrowing or nerve root involvement.  (Tr. at 216-17.)

On December 12, 2001, Plaintiff was admitted to The Surgery Center for carpal tunnel surgery on the right performed by Dr. Beird.  (Tr. at 270-72.)  On January 22, 2002, Plaintiff saw Dr. Beird and reported that the numbness was better but that she could not comb her daughter's hair without difficulty on the right side.  Tinel's and Phalen's were still positive at both wrists.  (Tr. at 269.)

Plaintiff returned to Dr. Awerbuch in March 2002.  Tinel's and Phalen's signs were still positive at the wrists.  The doctor advised her to have an EMG of her lower extremities and to follow up with Dr. Eckert regarding surgical decompression.  He recommended continued use of the carpal tunnel splints and ulnar nerve braces and ordered a stress test to assess her thoracic outlet syndrome.  Plaintiff was advised to remain off work.  (Tr. at 234.)  EMG findings the same date were consistent with right tarsal tunnel syndrome.  (Tr. at 235.)  A somatosensory evoked response test of the Plaintiff's upper limbs conducted on April 19, 2002, showed an abnormal study, suggesting right thoracic outlet syndrome.  Similar results were seen in an examination conducted in late June 2002.  The doctor also noted that Plaintiff had trouble picking up coins from the table, buttoning, and stated that she was not able to drive to the office.  Tinel's was also positive at the ankle, wrists and elbow, and Plaintiff continued to evidence reduced grip strength.

10

Dr. Awerbuch advised Plaintiff not to return to work unless conditions could be in place to prevent aggravation of her condition.  (Tr. at 230.)

Plaintiff returned to Dr. Beird on July 23, 2002, stating that she was willing to return to work since the plant was willing to work with her restrictions.  The doctor agreed to allow Plaintiff to return to work with restrictions.  (Tr. at 269.)

In early October 2002, Dr. Awerbuch reported that Tinel's and Phalen's signs were still positive at the wrists and right elbow.  Plaintiff also had tenderness over her lumbar spine.  Dr. Awerbuch recommended an EMG to check the extent and severity of her complaints. (Tr. at 283.)

On January 6, 2003, Plaintiff reported to Dr. Awerbuch that she was very stressed and still having a lot of pain in her wrists, hands and elbows. She reported that her right great toe was dragging and that she was trying to get a referral to a foot doctor.  Physical exam revealed good heart rhythm and rate, clear lungs, and blood pressure of 122/76.  Tinel's and Phalen's signs were still positive at both wrists, and grip was reduced.  Dr. Awerbuch recommended an EMG and that Plaintiff should limit her activities and see a podiatrist.  (Tr. at 282.)

On March 25, 2004, Dr. Awerbuch ordered physical and occupational therapy for Plaintiff. Plaintiff was considering further surgery.  Dr. Awerbuch noted sensory loss over the right hand and over the left thumb and first two fingers.  She also had reduced lumbar motion and tenderness along the right tarsal tunnel.  (Tr. at 284.)

At the administrative hearing, a Vocational Expert (VE) testified.  She characterized Plaintiff's prior work at General Motors to be unskilled and listed as medium in exertion.  (Tr. at 433.) However, the VE indicated that as described,  Plaintiff's work was actually for the most part light in exertion.  In response to a hypothetical question presuming a person in Plaintiff's circumstances who could undertake light exertion work requiring the frequent use of the arms and

frequent tasks, the VE opined that such a person could undertake unskilled light exertion work. The VE identified 2,400 information clerk, 6,000 self-serve gas station attendant, 18,900 sales clerk, 10,700 gate guard and 4,800 counter clerk jobs consistent with these hypothetical conditions. (Tr. at 434.)  In response to a question presuming the truthfulness of Plaintiff's testimony, the VE stated that such a person could not undertake Plaintiff's prior work nor any substantial gainful employment.  (*Id.*)

### E.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the onset of her disability.  (Tr. at 25.)  At step two, the ALJ found that Plaintiff's carpal tunnel syndrome was "severe" within the meaning of the second sequential step.  (*Id.*)  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (*Id.*)  At step four, the ALJ found that Plaintiff could not perform her past relevant work.  (*Id.*)  At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy.  (Tr. at 26.)

Using the Commissioner's grid rules as a guide, the ALJ found that:

. . . there are a significant number of jobs in the national economy that she could perform.  Examples of such jobs include work as self service gas station attendant (6,000 jobs), sales clerk (18,900 jobs), gate guard (10,700 jobs) and sales counter clerk (4,800 jobs).

(*Id.*)

### F.      Analysis and Conclusions

### 1.      Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a significant range of light work.  (*Id.*)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim.  I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2.      Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Mullen,* 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

On this record, I suggest that Plaintiff's counsel's arguments have merit, and that substantial evidence fails to support the findings of the ALJ.  The ALJ's residual functional capacity finding of light exertion work is, I suggest, inconsistent with both the objective medical findings of

13

Plaintiff's treating physicians and the consistent results of repeated EMG examinations.  These medical findings are in turn based upon his repeated physical examinations of the Plaintiff over a number of years.  Although Plaintiff apparently responded favorably to physical therapy conducted in 2001, thereafter, Plaintiff's treating physicians consistently found positive Tinel's and Phalen's signs both before and after Plaintiff's carpal tunnel release surgery.

I further suggest that the ALJ's hypothetical questions fail to appropriately summarize the objective medical findings contained in the medical records, as required in this circuit.  *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  In particular, I suggest that the ALJ's hypothetical condition that Plaintiff be able to undertake frequent handling of tasks is thoroughly inconsistent with the objective medical evidence of record.

Once it has been determined that the Commissioner's administrative decisions are not supported by substantial evidence, a district court faces a choice.  It may either remand the case to the Commissioner for further proceedings or direct the Commissioner to award benefits.  In this circuit, the latter option requires that the "proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking[,]" *Mowery v. Heckler* 771 F.2d 966, 973 (6th Cir. 1985); or that "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits[.]" *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).  Because I conclude that these conditions have been met, I suggest that this case be remanded for an award of benefits.

14

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ *Charles E Binder*

CHARLES E. BINDER
United States Magistrate Judge

Dated: June 29, 2006

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James Brunson and Mikel Lupisella, and served in the traditional manner on Honorable David M. Lawson.

Dated:  June 29, 2006

By   s/Mary E. Dobbick
Secretary to Magistrate Judge Binder